**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

Gerald P.,

Plaintiff,

v.

Frank Bisignano, Commissioner of Social Security,

Defendant.

Case No. 2:25-cv-01545-DJA

**Order**

Plaintiff appeals the ALJ's decision finding him not disabled. He argues that the ALJ failed to state clear and convincing reasons for rejecting Plaintiff's symptoms and testimony. He also contends that the ALJ's decision to reject Plaintiff's significant hearing limitation is not supported by substantial evidence. Because the Court finds that (1) the ALJ did not err in rejecting Plaintiff's symptom testimony and that (2) the ALJ erred by rejecting Plaintiff's significant hearing limitation, it grants in part and denies in part Plaintiff's motion and remands the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). The Court finds these matters properly resolved without a hearing. LR 78-1.

## I. Procedural History

Plaintiff filed an application for a period of disability and disability insurance benefits on December 13, 2022, alleging disability commencing November 18, 2022. (AR 15). The Commissioner denied the claim by initial determination on August 9, 2023, and denied reconsideration on December 20, 2023. (*Id.*). Plaintiff requested a hearing before an ALJ and on May 6, 2025, ALJ Bruce T. Cooper published an unfavorable decision, on which date the ALJ's decision became the final decision of the Commissioner. (*Id.*). Plaintiff then timely filed the instant civil action.

//

## II. Discussion

### *A. Whether the ALJ erred by failing to give clear and convincing reasons for rejecting Plaintiff's symptoms and testimony.*

The ALJ must make two findings before the ALJ can find a claimant's pain or symptom testimony not credible. 42 U.S.C. § 423(d)(5)(A) (explaining that "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability" absent additional findings). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide "specific, clear and convincing reasons for" rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014). "[A]n ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (quotation marks and citation omitted).

Because the "grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based," the agency must explain its reasoning. *Securities and Exchange Commission v. Chenery Corp*., 318 U.S. 80, 87 (1943); *Treichler v. Commissioner of Soc. Sec. Admin.*, 775 F.3d 1090, 1101-102 (9th Cir. 2014). The Ninth Circuit thus requires the ALJ to "specifically identify the testimony [from a claimant] she or he finds not to be credible and ... explain what evidence undermines the testimony." *Treichler*, 775 F.3d at 1102 (citing *Bunnell*, 947 F.2d at 346 and *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)). That means "[g]eneral findings are insufficient." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (superseded on other grounds); *see Holohan*, 246 F.3d at 1208 (concluding "that the ALJ's credibility determination was erroneous" because it was based on the ALJ's characterization of "the 'record in general'").

Here, the Court finds that the ALJ did not err because he provided clear and convincing reasons for rejecting Plaintiff's testimony. In evaluating Plaintiff's symptom testimony, the ALJ stated that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 24). Plaintiff argues that the ALJ's final decision is unsupported by substantial evidence because the evidentiary record taken as a whole supports Phillips' symptoms and limitations. (ECF No. 11). However, the Court is not persuaded by Plaintiff's claims of error and finds that the ALJ properly discounted Plaintiff's symptom testimony by providing specific, clear, and convincing reasons based on inconsistencies with his alleged symptoms, the medical records, and Plaintiff's daily activities.

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez v. Comm'r of Soc. Sec.* , 740 F.3d 519, 523 (9th Cir. 2014) (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" (*Id.*) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 523 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." (*Id.*) (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

Regarding medical opinions, an ALJ's decision to discredit medical opinion evidence must be supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). The ALJ must "articulate . . . how persuasive" she finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [she] considered the supportability and consistency factors" in reaching these findings. *Id*. § 404.1520c(b)(2). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Id*. § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id*. § 404.1520c(c)(2). A medical opinion is less persuasive when it is not consistent with the other evidence. *Id*.

Plaintiff presents the findings of Dr. Locke, PA-C Laramee, and Dr. Cash to support his testimony and to show that—based on these opinions—the ALJ did not provide clear and convincing reasons for rejecting his testimony[1]. The ALJ found that Plaintiff's testimony was not fully consistent with the medical evidence of record and failed to support Plaintiff's allegations of disabling symptoms. While Plaintiff points to several of these medical opinions that support his testimony, here, the ALJ's decision to discredit them was supported by substantial evidence. The ALJ correctly pointed out that the objective medical findings did not support Plaintiff's alleged limitations *to the extent* he claimed. "When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis original). ALJ's may properly rely "on any *contradictions* between a claimant's subjective symptom testimony and the objective medical evidence in the record to discount the symptom testimony." (*Id*.) at n. 1 (emphasis original).

Plaintiff testified that he could tolerate 15 minutes of standing or walking but must then sit. (AR 47). He also testified that walking 100 yards would require three stops to rub the knees.

---

[1] Plaintiff also asserts that Dr. Ribeiro's medical opinion is "partially consistent" with Plaintiff's symptoms, but he does not clarify which findings in particular are partially consistent and to what extent.

(AR 48). Plaintiff explained that his neck hurts when he lifts, limiting him to five pounds. (AR 49-50). Here, Plaintiff asserts that Dr. Locke's opinions explaining Plaintiff's exertional limitations; standing and walking limitations; and foot control and postural limitations support his testimony. (ECF No. 11). The ALJ found the opinion of Dr. Locke unpersuasive, finding that the record was more consistent with Plaintiff being able to perform light exertional work without Dr. Locke's assessed sitting, standing, and walking limitations. (AR 27). While it is true—as Plaintiff points out—that the ALJ in part criticizes Dr. Locke's assessment for using a pre-drafted form, the ALJ goes on to specifically explain why Dr. Locke's findings are inconsistent with Plaintiff's subjective testimony.

The ALJ explained as follows:

> In fact, Dr. Locke provided no supporting diagnostic or objective evidence with this assessment, and Dr. Locke offered no explanation for this limiting assessment while simply completing a pre-drafted form. The record documents the claimant's spinal and knee impairments but includes signs that the claimant would not have the extent of limitations proposed by this doctor.

(AR 27).

The same can be stated for the other medical opinions provided by Plaintiff. Plaintiff argues that PA-C Laramee's opinion—finding that Plaintiff can lift no more than ten pounds and stand and walk for two hours at a time— also further support his testimony. (ECF No. 11). The ALJ noted that PA-C Laramee cited to the treatment record and exhibits in forming his assessment, but the ALJ ultimately found it unpersuasive. The ALJ went on to explain that PA-C Laramee stated only mild objective findings and no significant diagnostic results or treatments that would support the extent of his reported restrictions. (AR 27). Plaintiff also asserts that Dr. Cash's observations of his back and neck pain further support his testimony. (ECF No. 11). The ALJ found Dr. Cash's opinion partially persuasive to the extent that Dr. Cash concluded that Plaintiff "could lift no more than 10 pounds frequently and 20 pounds occasionally, not perform overhead lifting or reaching, and not perform repetitive bending, twisting, stooping, crawling, and squatting." (AR 28). The ALJ also found that Dr. Cash did not address all the limitations

included in the record or review the transcript at the hearing level. Nonetheless, the ALJ determined that Dr. Cash's observations were inconsistent with Plaintiff's testimony because—despite Plaintiff's neck and back pain— he had "a negative straight leg raising test, a 5/5 on motor strength, intact sensation, and intact reflexes." (AR 28). While Plaintiff makes further assertions in his reply that certain medical evidence and opinions are actually consistent with his testimony, Plaintiff's arguments offer a different interpretation of the evidence. And, when the evidence will support more than one rational conclusion, the Court must defer to the ALJ's conclusion.

Plaintiff further submits that the ALJ erred in considering his treatment conservative.[2] (ECF No.11). Plaintiff cites *Lapeirre-Gutt v. Astrue*, 382 Fed. App'x 662, 664 (9th Cir. 2010) as the only persuasive authority to support the proposition that injection therapy combined with other courses of treatment do not constitute conservative treatment. (*Id*.). Plaintiff misreads the decision in *Lapeirre-Gutt.* The *Lapeirre-Gutt* court assumed that the plaintiff's "regimen of powerful pain medications and injections can constitute conservative treatment." 382 Fed. App'x at 664 (internal quotation). The *Lapeirre-Gutt* court did find the ALJ's conclusion that the plaintiff's treatment was conservative erroneous. (*Id.*). However, that was because the plaintiff had already undergone spinal fusion surgery and "the record [did] not reflect that more aggressive treatment options [were] appropriate or available," and not merely because the plaintiff was receiving a combination of pain medication and trigger point injections. (*Id*). And so, the Court finds the facts of the present case—in which Plaintiff has undergone injections, occupational therapy, and acupuncture—to be distinguishable from the circumstances in *Lapeirre-Gutt* in which the plaintiff had undergone cervical fusion surgery to relieve her pain with no success. 382 Fed. App'x at 664.

---

[2] The ALJ does not directly call Plaintiff's treatment "conservative." The ALJ found that "while the claimant attended multiple doctor's appointments between late 2022 and 2025, the treatment records from these appointments imply that the claimant's doctors have no over-arching treatment plan nor that these doctors find that the claimant needs any specific treatment, aside from managed medication, for his impairments." (AR 28). In response, Plaintiff contends that his use of injection therapy is not conservative treatment. (ECF No. 11).

Moreover, this Court, and courts in the Ninth Circuit generally, have rejected contentions that trigger point injections combined with pain medication constitute more than conservative treatment. *See, e.g.*, *Bartlett v. Kijakazi*, 2022 WL 2274558, *4 (D. Nev. 2022). In all, the Court finds the ALJ reasonably discounted Plaintiff's symptom testimony based on his conservative, disjointed treatment. *See, e.g.*, *Gonsalez v. Comm'r of Soc. Sec.*, No. 2:23-CV-02721-SCR, 2025 WL 1927544, at *6 (E.D. Cal. July 14, 2025) (upholding the ALJ's finding of contradiction between the plaintiff's alleged disabling pain and her conservative treatment record which reflected "no overarching treatment plan"). Accordingly, the Court finds no error on this basis.

Plaintiff also states that the ALJ found Plaintiff's activities of daily living inconsistent with his testimony. (ECF No. 11). Plaintiff notes that the ALJ relied on a medical report taken by Dr. Avram in finding that Plaintiff had "intact activities for basic functions." (*Id.*). Plaintiff clarifies that Dr. Avram found that Plaintiff's activities of daily living were independent, but not easy. (*Id.*) Plaintiff points out that he cleans at eye level; mainly relies on his wife to clean; sometimes moves around by an electric cart; and limits his cooking to simple products. (*Id.*). It appears that Plaintiff argues that the ALJ erred in relying on Plaintiff's activities of daily living to reject his testimony. To the extent that he is, the Court does not find that the ALJ's reliance on Plaintiff's activities of daily living was an error.

An ALJ may consider various factors in evaluating the allegedly disabling subjective symptoms, including: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate symptoms; treatment, other than medication, received for relief of symptoms; any measures a claimant has used to relieve symptoms; and other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c), § 416.929(c); SSR 16-3P. "Even if the claimant experiences some difficulty or pain, her daily activities may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Smartt*, 53 F.4th at 499 (quotation marks and citation omitted). Here, "[t]he ALJ made a reasonable determination based on specific, clear and convincing evidence that [Plaintiff's] daily activities were inconsistent with

the alleged severity of her limitations." (*Id.*). The reported daily activities demonstrate that Plaintiff engaged in "somewhat normal level of daily activity and interaction[.]" (*Id.* at 500) (citation and quotation marks omitted).

The ALJ found that Plaintiff's reported activities of daily living and demonstrated abilities additionally support the finding that he is capable of work with the assessed limitations. The ALJ noted that Plaintiff admitted he could "perform activities of daily living independently, including shopping for food, cooking, driving, manage his medications and finances, perform activities of personal care, wash dishes, some cleaning, folding laundry, use a computer, and perform errands or go to a movie." (AR 29). Moreover, the Commissioner also argued that despite Plaintiff's contention that he is "in pain constantly, daily," (AR 74), he stated that he could "dress himself, bathe himself, do dishes, run errands, pick up after himself, sweep with a broom, fold laundry, cook, use microwave, pay bills, watch TV, enjoy watching sports, shop, manage money, listen to radio, go to movies, go out to eat, […] visit friends, take short walks, go shopping with family, and visit relatives/children/grandchildren." (ECF No. 14). The ALJ found these activities inconsistent with Plaintiff's allegations of disabling symptoms and limitations because they require "lifting, standing, walking, and other elements of activity." (AR 29).

The Court reiterates its previous principle. While Plaintiff asserts that his difficulties in performing his activities of daily living are actually consistent with his testimony, Plaintiff's arguments offer a different interpretation of the evidence. And, when the evidence will support more than one rational conclusion, the Court must defer to the ALJ's conclusion. Here, the ALJ set forth specific, clear and convincing reasons for concluding Plaintiff's symptom testimony was not fully consistent with the objective medical record and Plaintiff's activities of daily living. Accordingly, reversal is not warranted on this basis.

//

//

//

//

//

***B. Whether the ALJ erred by failing to give clear and convincing reasons for rejecting Plaintiff's symptoms and testimony.***

The Court turns next to Plaintiff's argument that the ALJ erred because his rejection of Plaintiff's significant hearing limitation was not supported by substantial evidence. Plaintiff contends that the vocational testimony is not a basis for substantial evidence because the ALJ did not consider Plaintiff's hearing limitation accurately. (ECF No. 15). The Court is persuaded by Plaintiff's argument. So, the Court finds that the ALJ's rejection of Plaintiff's hearing limitation is not supported by substantial evidence and remands on this basis.

In *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015), the Ninth Circuit explained the ALJ's obligation at step five of the sequential evaluation process. First, an ALJ must "assess[ ] a claimant's residual functional capacity, defined as the most that a claimant can do despite physical and mental limitations caused by his impairments and related symptoms." *Id.* at 845 (internal citation and quotation marks omitted). Next, the ALJ must consider "potential occupations that the claimant may be able to perform." *Id.* (internal citation omitted). When "making this determination, the ALJ relies on the DOT, which is the SSA's primary source of reliable job information regarding jobs that exist in the national economy. ... The DOT describes the requirements for each listed occupation...." *Id.* at 845-46 (internal citations and quotation marks omitted). The ALJ will also rely "on the testimony of vocational experts who testify about specific occupations that a claimant can perform in light of his [RFC]." *Id.* (internal citations omitted). And "to conclude the Step Five analysis, the ALJ determines whether, given the claimant's [RFC], age, education, and work experience, he actually can find some work in the national economy." *Id.* (internal citations and quotation marks omitted).

When the ALJ's question to a vocational expert inaccurately describes the claimant's true limitations, then "the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)). In that situation, "the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings." *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012)

(quoting *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984)) (internal quotation mark omitted). Even if the ALJ commits an error at step five, the Court must affirm the disability determination if the error is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). "An error is harmless only if it is 'inconsequential to the ultimate nondisability determination.'" *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)).

Here, the ALJ found that Plaintiff's bilateral hearing loss was not a severe impairment because he was assessed for a hearing aid at an audiology appointment. (AR 19). At Plaintiff's second hearing, the ALJ then posed a hypothetical to the vocational expert that envisioned a claimant with the following characteristics:

> Less than full range of light, 290 pounds occasionally, 10 pounds frequently. Sitting, give me one moment. Sitting, standing, walking, six hours each. Push and pull as much as it can. Lift and carry, reaching overhead frequently to the left. Occasional ladders, ropes, and scaffolds, frequent ramps and stairs, frequent balance, frequent kneel, occasionally crouch, occasionally crawl, occasionally. Never work in unprotected heights, never moving parts in extreme cold. Occasionally the hearing aids, you probably don't need it, but we'll go in moderate noise also.
>
> (AR 58).

Based on this hypothetical, the vocational expert found that Plaintiff could return to his previous job as a security guard or perform such jobs as routing clerk, sales attendant, or collator operator. (AR. 58-59). The ALJ ultimately determined that Plaintiff needed to avoid exposure to moderate noise with regard to his hearing limitation. (AR 24).

It is not clear whether the vocational testimony and the ALJ's subsequent determination adequately encompass Plaintiff's actual limitations. The Court finds that this error is not harmless. "An error is harmless only if it is 'inconsequential to the ultimate non-disability determination.'" *Lambert*, 980 F.3d at 1266, 1278. Here, the ALJ failed to adequately address the hearing impairments supported by the record and explained in Plaintiff's testimony. The Commissioner argues that Plaintiff's hearing loss is not a significant limitation due to the effectiveness of his hearing aids. (ECF No. 14). However, Plaintiff explains that the functionality of his hearing aids centers on a Bluetooth-enabled environment: "[W]ith my hearing

aids, I can – they're up to [ ] date where I can Bluetooth to pretty much anything. And it's all in my house where everything hooks up it [sic] when I walk in." (AR 75). Plaintiff points out in his reply that there are no indications that security guard, routing clerk, sales attendant, or collator operator work would include the Bluetooth-enabled environment that could hook up to his hearing aids. (ECF No. 15). Moreover, Plaintiff further submits that he will misunderstand spoken language with any background noise according to an audiology assessment. (ECF No. 11).

The Commissioner responds that: (1) the ALJ's conclusion is supported by the findings from two doctors who determined that Plaintiff needs to avoid exposure to "excessive noise," and (2) that the audiology report Plaintiff relies on is from his initial fitting for hearing aids. (ECF No. 14). But Plaintiff also points out that "excessive noise" is not a vocational term and that neither doctor explained its meaning. The Court is persuaded by this argument. It is unclear if Plaintiff's actual limitations were explained accurately. The ALJ seems to have predicated its evaluation of the medical record—and in turn, its hypothetical to the vocational expert—on Plaintiff's use of hearing aids when there are no clear indications that Plaintiff would have the full use of their functions in a work environment. As such, remand is appropriate so the ALJ may consider *all* of the medical evidence and testimony with respect to Plaintiff's hearing limitation in determining Plaintiff's RFC and whether other jobs exist in significant numbers that Plaintiff can perform despite his limitations.

//

//

//

//

//

//

//

//

**IT IS THEREFORE ORDERED that Plaintiff's motion for reversal and remand (ECF No. 11) is granted in part and denied in part.** It is granted in part because the ALJ's rejection of Plaintiff's significant hearing limitation was not supported by clear and convincing evidence.

**IT IS FURTHER ORDERED** that the Commissioner's final decision is reversed and remanded for further administrative proceedings under sentence four of 42 U.S.C. § 405(g) on the issue of Plaintiff's hearing limitation and its incorporation into the RFC.

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to enter judgment accordingly and close this case.

DATED: September 30, 2026,

DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE